**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INVENSAS CORPORATION and TESSERA ADVANCED TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 19-cv-861-RGA |
| v. | ) ) | FILED UNDER SEAL |
| NVIDIA CORPORATION, | ) ) ) | CONTAINS RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY INFORMATION |
| Defendant. | ) ) | |

<u>**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**</u>

Of Counsel:

Michael K. Plimack (mplimack@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
Udit Sood (usood@cov.com)
Michael E. Bowlus (mbowlus@cov.com)
Ziwei Song (ksong@cov.com)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Dated:  June 10, 2020

*Additional counsel located on the following page*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Robert T. Haslam (rhaslam@cov.com)
Thomas E. Garten (tgarten@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Matthew Phelps (mphelps@cov.com)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

# <u>TABLE OF CONTENTS</u>

I.    Introduction and Summary ................................................................................. 1

II.   Background ........................................................................................................ 3

     A.    In July 2019, Plaintiffs Diligently Sought Discovery Regarding the Sales, Delivery, Importation, and Distribution of the Accused Products.......................... 3

     B.    NVIDIA Did Not Begin Its Responsive Production Until Six Months Later in January 2020, After the Deadline to Amend the Complaint............................. 5

     C.    Plaintiffs Diligently Examined NVIDIA's Responsive Production, Which Led to NVIDIA's Belated Disclosure That It ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ........................................................................... 7

III.  Legal Standards................................................................................................. 9

IV.  Argument ........................................................................................................ 11

     A.    Good Cause Exists to Amend the Scheduling Order Under Rule 16(b) Because Plaintiffs Diligently Sought Discovery and Diligently Sought Leave to Amend the Complaint ........................................................................ 11

     B.    Amendment is Warranted Under Rule 15(a) ...................................................... 14

          1.    Plaintiffs Acted Without Undue Delay ..................................................... 15

          2.    Plaintiffs' Amended Allegations Are Not Futile ...................................... 15

          3.    NVIDIA Will Not Be Unduly Prejudiced................................................. 19

V.    Conclusion ...................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. HTC Corp.*,
 No. 17-cv-83-LPS-CJB, 2017 WL 6442101 (D. Del. Dec. 18, 2017)....................................16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................15

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
 839 F.3d 242 (3d Cir. 2016)...............................................................................................10

*Dole v. Arco Chem. Co.*,
 921 F.2d 484 (3d Cir. 1990)...............................................................................................10

*Enzo Life Scis., Inc. v. Hologic Inc.*,
 No. 16-cv-894-LPS-CJB, 2018 WL 4660355 (D. Del. Sept. 26, 2018) .................................16

*Foman v. Davis*,
 371 U.S. 178 (1962)............................................................................................................9

*Home Semiconductor Corp. v. Samsung Elecs. Co.*,
 No. 13-cv-2033-RGA, 2019 WL 2135858 (D. Del. May 16, 2019).....................10, 12, 13, 19

*ICU Med., Inc. v. RyMed Techs., Inc.*,
 674 F. Supp. 2d 574 (D. Del. 2009).....................................................................................10

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
 15-cv-108-RGA, 2018 WL 4611216 (D. Del. Sept. 26, 2018)............................10, 14, 15, 19

*Long v. Wilson*,
 393 F.3d 390 (3d Cir. 2004)...............................................................................................14

*Wakley Ltd. v. Ensotran, LLC*,
 12-cv-728-GMS, 2014 WL 12707523 (D. Del. Feb. 6, 2014)...............................................10

*Wyeth v. Medtronic, Inc.*,
 No. 08-cv-1021-JAP, 2011 WL 1675041 (D.N.J. May 3, 2011)............................................10

**Statutes**

35 U.S.C. § 271...................................................................................................................15

ii

**Other Authorities**

Fed. R. Civ. P. 15 .................................................................................................. *passim*

Fed. R. Civ. P. 16 .................................................................................................. *passim*

Plaintiffs Invensas Corporation and Tessera Advanced Technologies, Inc. (collectively, "Plaintiffs") respectfully submit this motion for leave to amend their complaint pursuant to Federal Rules of Civil Procedure 15 and 16.

## I.      <u>INTRODUCTION AND SUMMARY</u>

Plaintiffs seek leave to amend their complaint to add two NVIDIA subsidiaries as defendants. The two subsidiaries are NVIDIA Singapore Pte. Ltd. ("NVIDIA Singapore") and NVIDIA International, Inc. ("NVIDIA International"). The current defendant, NVIDIA Corporation, wholly owns both subsidiaries. Plaintiffs' proposed amended complaint is attached hereto as Exhibit 1, and a redline comparison against the current complaint (D.I. 1) is attached hereto as Exhibit 2.



Recent disclosures by NVIDIA Corporation revealed the necessity of this amendment. Specifically, in April 2020, NVIDIA Corporation disclosed for the first time that (1) ███████ ████████████████████████████████████████, and (2) NVIDIA Corporation ██████████ ████████████████████████████████████████████████████████████████████████. Based on these recent disclosures, Plaintiffs learned through subsequent investigation that NVIDIA Corporation was the recipient of NVIDIA Singapore's shipments to the United States. Thus, NVIDIA Corporation, the current defendant, has ████████████████████████████ ███████████. NVIDIA Corporation did not disclose ███████████████████████████████ ███████████ until April 2020, even though Plaintiffs requested production of documents related to sales, delivery, importation, and distribution of accused products in July 2019.

These subsidiaries play a major role in selling products that are accused in this case. As alleged in the proposed amended complaint, from fiscal year 2015 through 2019, NVIDIA Singapore reported roughly $31.5 billion in revenue. Ex. 1 (Proposed First Amended Complaint) ¶¶ 16–17. During this time, NVIDIA Corporation reported roughly $38 billion in revenue on a

consolidated basis. *Id.* Thus, NVIDIA Singapore generated roughly 83 percent of NVIDIA

Corporation's $38 billion of revenue. NVIDIA Corporation realized this revenue from NVIDIA

Singapore through its ownership of NVIDIA International, which is the direct owner of NVIDIA

Singapore. *Id.* ¶ 7. As alleged in the proposed amended complaint, NVIDIA Singapore and

NVIDIA International, along with their ultimate parent NVIDIA Corporation, infringed the

Asserted Patents and induced third parties to infringe them as well. *Id.* ¶¶ 80, 90, 98, 105, 113,

121, 128, 135.

Even though NVIDIA Singapore and NVIDIA International ███████████████

█████████████████████████████, NVIDIA Corporation has

objected to providing discovery from them. Plaintiffs need to add the subsidiaries as defendants

to ensure that Plaintiffs can obtain full relief for all of NVIDIA's infringing acts, whether done

by the parent corporation or by its wholly-owned subsidiaries.

The deadline to amend the complaint passed on December 2, 2019, before NVIDIA's

disclosures in April 2020. Good cause exists to amend the scheduling order under Rule 16(b) and

allow amendment of the complaint because Plaintiffs diligently brought this motion within

two months of learning that NVIDIA Corporation ██████████████████████

██████. Furthermore, Plaintiffs diligently sought this information from NVIDIA

Corporation early in the litigation by requesting documents related to sale, delivery, importation,

and distribution of accused products in July 2019. NVIDIA delayed its responsive production for

six months. By the time NVIDIA started its responsive production, the deadline to amend the

complaint had already passed.

Amendment should be permitted under Rule 15(a) as well, which instructs courts to

"freely give leave when justice so requires." Here, leave to amend should be freely given

because Plaintiffs did not unduly delay in seeking amendment, their amended allegations are not futile, and permitting amendment would not unduly prejudice NVIDIA. Six months of fact discovery remain, and trial does not begin until September 20, 2021.

For these reasons and the other reasons explained below, the Court should grant Plaintiffs' motion and allow them to file the attached first amended complaint.[1]

## II.   BACKGROUND

### A.   In July 2019, Plaintiffs Diligently Sought Discovery Regarding the Sales, Delivery, Importation, and Distribution of the Accused Products

Plaintiffs filed their complaint against NVIDIA Corporation on May 8, 2019. D.I. 1. Plaintiffs allege that numerous NVIDIA graphics processing units ("GPUs") and NVIDIA systems-on-a-chip ("SoCs") infringe the asserted patents, which relate to semiconductor fabrication, design, and assembly. *Id.*

Discovery began on July 30, 2019. On that date, Plaintiffs immediately propounded requests seeking information from NVIDIA regarding sales, delivery, importation, and distribution of the accused products, including the following three requests:

> Request for Production No. 41:
>
> Separately for each NVIDIA Accused Product, documents sufficient to show the number of units sold and the sales price for those units on a monthly basis from May 8, 2013, to the present; (b) total revenue that you derived from such sales; (c) total costs of such sales, including incremental costs; (d) name and address of the person to whom those products were sold based on how the sale was booked by NVIDIA; (e) name and address of the person that paid for those products based on NVIDIA's receipt of that payment; (f) name and address of the person to whom those products were delivered; and (g) projected number of units to be sold and the projected sales price for those units on a monthly or quarterly basis.

---

[1] Plaintiffs also seek leave to delete Count V from the complaint. The parties stipulated to dismiss Count V, and the Court granted the stipulation. D.I. 141, 143.

Request for Production No. 42:

Separately for each NVIDIA Accused Product, documents relating to each importation into the United States, including the date of importation, the quantity imported, the declared value in U.S. dollars, the importer(s), the port of entry, the person and location to which the shipment was delivered.

. . .

Request for Production No. 48:

Separately for each NVIDIA Accused Product, all documents that disclose the supply chain for each product, starting with the manufacture of each product (e.g., geographic location of manufacture) and ending with the sale of the product (whether made to a distributor, a wholesaler, a retailers, or directly to a customer), including documents that identify any third party involved in any part of the supply chain, that party's role, and the dates of that party's involvement.

Ex. 3 (Plaintiffs' First Set of Requests for Production) at 19–20.

Plaintiffs also sought identification of sales and delivery information by propounding Interrogatory No. 6 on July 30, which uses language that is nearly identical to the language of RFP No. 41 (excerpted above). Ex. 4 (Plaintiffs' First Set of Interrogatories) at 11.

In response to each of the RFPs, NVIDIA stated on August 29, 2019 that it would produce documentation it described as "sufficient to show summary of sales information as kept in the ordinary course of business for the products specifically accused of infringement that were sold for shipment into the United States during the relevant time period in its possession, custody or control, that can be located after a reasonable search." Ex. 5 (NVIDIA's Objections to Requests for Production) at 61–63, 69–70. In response to Interrogatory No. 6, NVIDIA relied on Fed. R. Civ. P. 33(d) and agreed to produce "responsive documents" from which "certain information" could be ascertained. Ex. 6 (NVIDIA's Objections to Interrogatories) at 20.

**B.      NVIDIA Did Not Begin Its Responsive Production Until Six Months Later in January 2020, After the Deadline to Amend the Complaint**

NVIDIA unreasonably delayed production of its promised "summary of sales information" for six months. During this time, Plaintiffs asked NVIDIA about its forthcoming production on multiple occasions, but NVIDIA kept delaying. For example, after receiving NVIDIA's objections and responses on August 29, 2019, Plaintiffs diligently asked NVIDIA about its forthcoming production on October 1, Ex. 7 (10/1/2019 Letter from T. Garten) at 8, 9–10, and then again on October 16, Ex. 8 (10/16/2019 Email from T. Garten) at 1, 3.

On October 30, counsel for NVIDIA represented that NVIDIA would produce its sales and financial summary a month later, on November 27, which was the day before Thanksgiving and five days before the deadline to amend the complaint. Ex. 9 (10/30/2019 Email from C. Williamson) (stating that "NVIDIA will supplement its responses to Interrogatory Nos. 1-6 and 13 on November 27"); D.I. 25 (Scheduling Order) ¶ 2 (amendment deadline of December 2). In promising to produce the information by November 27, counsel for NVIDIA stated, "[w]e trust this resolves any purported 'dispute' . . . regarding NVIDIA's purported 'failure to provide a timely response.' " *Id.* But it did not. November 27 came and went, and NVIDIA produced nothing in response to RFP Nos. 41, 42, or 48 and identified nothing in response to Interrogatory No. 6. A case manager for NVIDIA emailed counsel for Plaintiffs that day and said that NVIDIA was "taking longer than expected" to prepare financial reports. Ex. 10 (11/27/2019 Email from L. Ouchida). NVIDIA's inability to timely gather the requested information was surprising given that months earlier, in an attempt to transfer this case to another district, NVIDIA represented to the Court that it employs ███ people who work in finance, sales, and marketing. D.I. 19 (8/20/2019 Declaration of Joseph Greco) ¶ 11.

5

The deadline to amend the complaint passed on December 2, 2019. D.I. 25 ¶ 2. By that date, NVIDIA still had not made its promised production of information in response to RFP Nos. 41, 42, and 48 and Interrogatory No. 6. NVIDIA's delays continued through the holidays and into the New Year. For example, on December 5, counsel for Plaintiffs asked NVIDIA to make its promised production of sales and financial information by December 11, among other things. Ex. 11 (12/5/2019 Email from T. Garten) at 2. On December 10, counsel for NVIDIA described Plaintiffs' request as "particularly unreasonable" and stated that NVIDIA's counsel was "discussing with [NVIDIA] the issues [Plaintiffs] raised" in their email. Ex. 12 (12/10/2019 Email from C. Williamson) at 1.

Counsel for Plaintiffs wrote to NVIDIA again on December 18 and asked NVIDIA to produce its promised sales and financial information, among other things, by December 27, which would have been a full month later than NVIDIA's previous commitment to provide the information to Plaintiffs by November 27. Ex. 13 (12/18/2019 Email from T. Garten) at 1, 2. In response, counsel for NVIDIA described Plaintiffs' request for supplementation by December 27 as "unreasonabl[e]" because December 27 was "two days following the Christmas holiday." Ex. 14 (12/22/2019 Email from C. Williamson). Counsel for NVIDIA stated that, regarding NVIDIA's failure to produce any sales or financial information and regarding other deficiencies, she would "discuss with [NVIDIA] and get back to you" or "supplement," including a "proposal" to supplement certain responses "in early January." *Id.* She further stated that Plaintiffs should allow counsel for NVIDIA "appropriate time to discuss with [NVIDIA], before involving the Court." *Id.*

By "early January," NVIDIA still had not produced the "summary of sales information" that it promised in response to RFP Nos. 41, 42, and 48 and Interrogatory No. 6. Thus, NVIDIA

essentially forced Plaintiffs to involve the Court. On January 17, 2020, Plaintiffs asked the Court

to compel NVIDIA to produce its promised sales and financial information. D.I. 82 (Plaintiffs'

1/17/2020 Discovery Letter Brief). Then, approximately 3 hours later on January 17, NVIDIA

for the first time produced a portion of its "summary of sales information." *See* Ex. 15

(1/17/2020 Email from L. Ouchida). Several more weeks passed until NVIDIA produced what

NVIDIA appears to regard as the final portion of its "summary of sales information" on February

6, 2020. *See* Ex. 16 (2/6/2020 Email from L. Ouchida); *see also* Ex. 17 at 88–91 (NVIDIA's

2/14/2020 Supp. Resp. to Interrogatory No. 6) (identifying documents produced on January 17

and February 6). In other words, NVIDIA spent over six months preparing the "summary of

sales information" that it promised in response to RFP Nos. 41, 42, and 48, and Interrogatory No.

6, and NVIDIA did not finish producing its "summary of sales information" until February 6,

2020, over two months after the deadline for Plaintiffs to amend the complaint on December 2,

2019, D.I. 25 ¶ 2. As previously noted, Plaintiffs propounded their discovery requests on July 30,

2019, the first day of discovery.

> **C.    Plaintiffs Diligently Examined NVIDIA's Responsive Production, Which Led to NVIDIA's Belated Disclosure That It** ████████████████████████ ████████████

Upon receiving NVIDIA's long-promised "summary of sales information," Plaintiffs

diligently examined it. The summary sales information is split among several dozen

spreadsheets, each having hundreds or thousands of rows. As part of their examination, Plaintiffs

notified NVIDIA in February that the thousands of rows of data did not allow Plaintiffs to match

any of the data with specific models of accused products. NVIDIA conceded this deficiency and

stated that it was "working" to provide this necessary information in several more weeks, by

March 16. D.I. 110 (2/21/2020 Joint Status Report) at 2.

Plaintiffs also diligently investigated NVIDIA's ambiguous and shifting characterizations regarding the scope of NVIDIA's "summary of sales information." Plaintiffs' investigation in this regard ultimately uncovered the information that forms the basis for Plaintiffs' amended complaint allegations. Specifically, at the beginning of this case in August 2019, NVIDIA stated without explanation that its forthcoming summary of sales information would be limited to products "sold for shipment into the United States," Ex. 5 at 61, 63, 69–70 (Objections to RFP Nos. 41, 42, and 48), but then on April 8, 2020, NVIDIA changed its position and informed Plaintiffs retroactively that the "summary of sales information" produced by NVIDIA supposedly encompasses "all" of its sales of accused products "regardless of where the products were shipped." Ex. 18 (4/8/2020 Email from C. Williamson) at Attachment p. 3. Following this new disclosure by NVIDIA, counsel for Plaintiffs asked to meet and confer with NVIDIA the following day. Ex. 19 (4/8/2020 Email from T. Garten).

After this meet and confer, and in response to Plaintiffs' request for clarification, NVIDIA disclosed for the first time that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. *See* Ex. 20 (4/13/2020 Email from C. Williamson). Soon thereafter, counsel for NVIDIA also disclosed for the first time that (1) ▮▮▮▮ ▮▮▮▮▮▮▮, and (2) ▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮ D.I. 136 (4/29/2020 Joint Letter) at 6. Additionally, as to NVIDIA Singapore, subsequent investigation by Plaintiffs using a private subscription service revealed that NVIDIA Corporation—the current defendant—appears to be the recipient of ▮ accused products that NVIDIA Singapore shipped to the United States. *See* Ex. 21 (U.S. importation records, 2013–2018). NVIDIA Corporation did not disclose ▮▮▮▮▮▮▮▮▮

██████ before April 2020. This information is not disclosed in the "summary of sales information" that NVIDIA produced in response to RFP Nos. 41, 42, and 48, and it is not reflected in any document produced by NVIDIA or disclosed in any interrogatory response served by NVIDIA.

Within weeks of NVIDIA Corporation's new disclosures in April, Plaintiffs requested an order compelling NVIDIA to produce sales data for its wholly-owned subsidiaries, given that ██ ████████████████████████████████████ NVIDIA Corporation has control over their information. D.I. 136 at 4. On May 4, the Court declined to order NVIDIA Corporation to produce this information and stated that NVIDIA's power to produce its subsidiaries' information did not make the subsidiaries parties to the case or make NVIDIA Corporation liable for their actions. D.I. 140 (5/4/2020 Discovery Order) at 2. On June 3, Plaintiffs informed NVIDIA of their intent to move to amend their complaint to add NVIDIA Singapore and NVIDIA International as defendants, Ex. 22, and the parties met and conferred on June 5. NVIDIA has not consented to Plaintiffs' amendment. Plaintiffs filed this motion on June 10.

## III.   LEGAL STANDARDS

Amendments to the pleadings before trial are governed by Federal Rule of Civil Procedure 15(a) which provides that that "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). *See generally Foman v. Davis*, 371 U.S. 178, 182 (1962). The determination of whether to grant a motion to amend is within the discretion of the Court, and the Supreme Court has instructed that leave to amend should be freely granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id.* at 182. The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims

are decided on the merits rather than on technicalities. *See, e.g.*, *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) ("Generally, Rule 15 motions should be granted."); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990) ("[W]e have held consistently that leave to amend should be granted freely.").

When the amendment is sought after the deadline imposed by a scheduling order, Rule 16 of the Federal Rules of Civil Procedure is also implicated. *See ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577–78 (D. Del. 2009). Rule 16(b) requires a showing of good cause by the movant and consent of the judge. Fed. R. Civ. P. 16(b)(4). "Good cause" exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension. Fed. R. Civ. P. 16(b)(4) Advisory Committee's Notes (1983 amendments). Thus, "the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the nonmoving party." *ICU Med., Inc.*, 674 F. Supp. 2d at 577–78.

Courts in this district, including this Court, have found good cause to exist when the amendment is based on the discovery of new information that was not timely provided by the defendant. *See, e.g.*, *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. 13-cv-2033-RGA, 2019 WL 2135858, at *3–*5 (D. Del. May 16, 2019) (finding "good cause" where the defendant did not disclose that it manufactured the accused products abroad until after the deadline to amend the complaint); *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 15-cv-108-RGA, 2018 WL 4611216, at *2 (D. Del. Sept. 26, 2018) (finding "good cause" where the plaintiff requested relevant information before the deadline to amend but the defendants did not produce the information until after); *Wakley Ltd. v. Ensotran, LLC*, 12-cv-728-GMS, 2014 WL 12707523, at *1 (D. Del. Feb. 6, 2014) (finding "good cause" due to the defendant's incomplete response to discovery responses just one week before the deadline to amend pleadings); *see also Wyeth v.*

*Medtronic, Inc.*, No. 08-cv-1021-JAP, 2011 WL 1675041, at *5–*8 (D.N.J. May 3, 2011)

(finding "good cause" to add a defendant's corporate affiliate as a defendant where the plaintiff

did not discover that the defendant's corporate affiliate sold accused products in the United

States until after the deadline to amend pleadings).

IV.    **ARGUMENT**

      A.    **Good Cause Exists to Amend the Scheduling Order Under Rule 16(b) Because Plaintiffs Diligently Sought Discovery and Diligently Sought Leave to Amend the Complaint**

      Good cause exists to amend the scheduling order and permit amendment of the complaint

because Plaintiffs diligently sought discovery regarding sales, delivery, importation, and

distribution of the accused products by propounding RFP Nos. 41, 42, and 48, and Interrogatory

No. 6 early in this case on July 30, 2019. NVIDIA responded to all of these requests by

promising a "summary of sales information" that it delayed producing for six months and did not

produce until after the deadline for Plaintiffs to amend the complaint. In the interim, Plaintiffs

diligently asked NVIDIA about its forthcoming production, including on October 1, Ex. 7

(10/1/2019 Letter from T. Garten) at 8,  9–10, and on October 16, Ex. 8 (10/16/2019 Email from

T. Garten) at 1, 3, and after NVIDIA broke its promise to produce the information by November

27, Plaintiffs continued to ask for the information multiple times in December, Exs. 11, 13, and

then filed a motion to compel on January 17, 2020, D.I. 82. Only after Plaintiffs sought court

intervention did NVIDIA make its first, partial production of the "summary of sales information"

on January 17, followed by an additional production on February 6. Exs. 15, 16.

      Not only were Plaintiffs diligent in seeking discovery responsive to RFP Nos. 41, 42, and

48, and Interrogatory No. 6, but they were also diligent in examining the "summary of sales

information" once NVIDIA finished producing it in February. Plaintiffs noted to NVIDIA in

February that the "summary of sales information" was missing accused product model numbers,

which NVIDIA conceded and agreed to remedy by March. D.I. 110 (2/21/2020 Joint Status

Report) at 2. After examining the "summary of sales information," Plaintiffs also questioned

NVIDIA about its scope and discovered that █████████████████████████████████

█████████, that NVIDIA Singapore shipped accused products to the United States (apparently to

NVIDIA Corporation), and that ████████████████████████████████████████████

██████████████████████████████████████████████. Ex. 20, D.I. 136 at 6, Ex. 21.

NVIDIA disclosed some of this information to Plaintiffs on April 13 and disclosed additional

information in the April 29 joint discovery letter brief. Ex. 20, D.I. 136 at 6. Plaintiffs diligently

(1) requested an order compelling NVIDIA Corporation to produce sales and financial

information for these subsidiaries on April 29 (D.I. 136 at 4), (2) informed NVIDIA of Plaintiffs'

intent to amend the complaint on June 3 (Ex. 22), and (3) filed this motion on June 10.

Plaintiffs could not have amended their complaint to name NVIDIA Singapore and

NVIDIA International as defendants by the amendment deadline of December 2, 2019 (D.I. 25

¶ 2) because by that point, NVIDIA had not produced *any* of its "summary of sales information"

that it promised in response to RFP Nos. 41, 42, 48 and Interrogatory No. 6, despite Plaintiffs'

multiple inquiries. *See Home Semiconductor*, 2019 WL 2135858, at *2 ("The good cause

element requires the movant to demonstrate that, despite diligence, the proposed claims could

not have been reasonably sought in a timely manner." (quoting *Venetec Int'l v. Nexus Med.*, 541

F. Supp. 2d 612, 618 (D. Del. 2010))). As explained above, Plaintiffs discovered that ██████

████████████████████████████████████ by diligently examining NVIDIA's

production of its summary sales information, and NVIDIA did not finish that production until

February 6, 2020, over two months after the deadline for amendment.

Plaintiffs' filing of this motion on June 10 is less than two months after NVIDIA first

identified the subsidiaries to Plaintiffs on April 13. Ex. 20. Plaintiffs' filing of this motion less

than two months after learning this new information from NVIDIA demonstrates diligence.

*Home Semiconductor*, 2019 WL 2135858, at *5 (granting leave to amend under Rule 15 and

Rule 16 and noting that "courts in the Third Circuit have found diligence when a party has

sought leave to amend within three months of learning new information") (citing *Logan v. Bd. of

Educ. of Sch. Dist. of Pittsburgh*, 2017 WL 1001602, at *6 (W.D. Pa. Mar. 15, 2017)).

████████████████████████████████████████████████

████████████████ could not reasonably be discovered from other sources of information. For

example, none of the documents produced by NVIDIA, and none of its interrogatory responses,

indicate that ████████████████████████████████████. Furthermore, it appears

that neither subsidiary maintains a website, and NVIDIA Corporation's website does not disclose

anything about what these subsidiaries do. Additionally, in NVIDIA's Form 10-K report for

2019, the only reference to these subsidiaries is in a list of 40 subsidiaries wholly-owned by

NVIDIA Corporation. Ex. 23 (excerpt from NVIDIA Corp. 2019 Form 10-K). The only

information provided in the list is the country in which each subsidiary is organized, which

discloses nothing about whether any of the 40 subsidiaries has provided accused products to

NVIDIA Corporation. *Id.* Once NVIDIA identified the subsidiaries to Plaintiffs, Plaintiffs were

able to learn more only by purchasing reports filed with the Singapore Government's Accounting

and Corporate Regulatory Authority and by using a private subscription service to search for

importation records. Finally, NVIDIA's counsel repeatedly insisted that any reference to the

████████████████████████████████ be redacted from the public version of the

parties' joint discovery letter. Ex. 24 (5/6/2020 Email from A. Wynn-Grant) at 1 ("[T]he fact that

██████████████████████████████████████████████████ is confidential information . . . ." (emphasis in original)); Ex. 25 (5/7/2020 Email from A. Wynn-Grant) at 1 (noting that "confidential shipping information is the subject of NVIDIA's proposed redactions"); *compare* D.I. 136 (sealed joint letter) at 6 *with* D.I. 145 (public redacted version) at 6. NVIDIA's insistence that the discovery letter's information about these subsidiaries be kept under seal shows that the information could not reasonably be discovered from public sources.[2]

In sum, good cause exists for Plaintiffs to amend their complaint under Rule 16(b) following expiration of the December 2, 2019 deadline because (1) Plaintiffs diligently sought information from NVIDIA regarding sales, delivery, importation, and distribution of the accused products, (2) NVIDIA delayed its responsive production for six months (past the deadline for amendment), and (3) Plaintiffs diligently moved to amend their complaint after examining NVIDIA's responsive production and discovering in April that ████████████████████ ████████████████████████████████████████████████████████████ ██████████ .

## B.     Amendment is Warranted Under Rule 15(a)

The Third Circuit follows "the well-established rule that amendments should be liberally allowed" under Fed. R. Civ. P. 15(a). *Long v. Wilson*, 393 F.3d 390, 401 (3d Cir. 2004). "The factors to consider in weighing a motion for leave to amend are '(1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile.' " *Int'l Constr. Prod. LLC v. Caterpillar Inc.*, No. 15-cv-108-RGA, 2018

---

[2] Plaintiffs object to NVIDIA's position that the subsidiaries' ████████████████████████ ████████████████████████████████████████████████████████████ is confidential information that must be kept under seal.

WL 4611216, at *3 (D. Del. Sept. 26, 2018) (quoting *Cot'n Wash Inc. v. Henkel Corp.*, 56

F.Supp.3d 613, 620 (D. Del. 2014)). Here, the Court should allow amendment because Plaintiffs

bring this motion in good faith and, as explained below, Plaintiffs acted without undue delay,

Plaintiffs' amended allegations are not futile, and allowing Plaintiffs' amendment will not

unduly prejudice NVIDIA.

### 1.    Plaintiffs Acted Without Undue Delay

For the reasons explained above in connection with Rule 16(b), Plaintiffs diligently

sought discovery and diligently filed this motion. This means that Plaintiffs' motion has not been

unduly delayed under Rule 15(a). *Int'l Constr. Prod.*, 2018 WL 4611216, at *4 ("[T]he Plaintiff

has shown diligence, which means its amendment has not been unduly delayed.").

### 2.    Plaintiffs' Amended Allegations Are Not Futile

The allegations in the proposed amended complaint are not futile, and should be allowed,

because they are sufficient to show a plausible claim for relief against both of the subsidiaries.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As with Plaintiffs' original allegations against

NVIDIA Corporation, Plaintiffs' amended allegations against the subsidiaries establish that they

are liable for infringement of the asserted patents under 35 U.S.C. § 271(a), § 271(b), and/or

§ 271(g). Plaintiffs' proposed amended allegations are based upon, among other things, ████

███████████████ (1) NVIDIA Singapore sold products that are accused in this case,

and shipped accused products to the United States (Ex. 20; D.I. 136 at 6), and (2) ██████

████████████████████████████████████████

███████████████████████████ (Ex. 20; D.I. 136 at 5, 6).

Furthermore, Plaintiffs' proposed amended allegations are not futile because the

allegations establish this Court's personal jurisdiction over the subsidiaries, both of which are

incorporated abroad. "This Court may exercise personal jurisdiction over a foreign defendant

pursuant to the 'dual jurisdiction' or 'stream of commerce' theory, where there is a showing: (1) of an intent to serve the Delaware market; (2) this intent results in the introduction of the product into the market; and (3) plaintiff's cause of action arises from injuries caused by that product." *3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-83-LPS-CJB, 2017 WL 6442101, at *2 (D. Del. Dec. 18, 2017). As to the first prong, a non-resident firm's "intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Enzo Life Scis., Inc. v. Hologic Inc.*, No. 16-cv-894-LPS-CJB, 2018 WL 4660355, at *3 n.5 (D. Del. Sept. 26, 2018) (quoting *Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014)). Here, Plaintiffs' proposed amended allegations establish personal jurisdiction because they show that each subsidiary (1) intended to serve the United States market, including Delaware; (2) this intent resulted in the introduction of products into the market; and (3) Plaintiffs' cause of action arises from injuries caused by those products. These three prongs are discussed below as to each subsidiary.

NVIDIA Singapore intended to serve the United States market, including Delaware, for several reasons. First, as alleged in the proposed amended complaint on information and belief, NVIDIA Singapore shipped several *tons* of NVIDIA computer graphics cards and NVIDIA SHIELD products to the United States from 2013 through 2018. Ex. 1 (Proposed First Amended Compl.) ¶¶ 14–15. Importation records attached to the proposed amended complaint confirm that these U.S.-bound shipments were frequent and contained thousands of kilograms of NVIDIA products that are at issue in this case. *Id.* Second, during the same time period, NVIDIA Singapore generated the vast majority of NVIDIA Corporation's worldwide revenue, and U.S. consumers provide a significant portion of the worldwide demand for NVIDIA products sold by

16

NVIDIA Singapore. *Id.* ¶ 16–17. Third, ████████████████ a protected communications agreement ("PCA") with Plaintiffs' U.S.-based parent company, Xperi, which licenses U.S. patents relevant to the products that NVIDIA Singapore sold and shipped to the United States. *Id.* ¶ 18. The PCA provides that disputes under the PCA are to be resolved in Delaware and under Delaware law. *Id.* Fourth, most of NVIDIA Singapore's directors reside in the United States and also work for NVIDIA Corporation, which is based in the United States and incorporated in Delaware. *Id.* ¶ 19. Fifth, there is no evidence that NVIDIA Singapore intended to exclude from its efforts some portion of the country that includes Delaware. *Id.* ¶ 20. Thus, for all these reasons, NVIDIA Singapore intended to serve the United States market, including Delaware, which satisfies the first prong of the stream of commerce test.

NVIDIA Singapore's intent to serve the United States market, including Delaware, resulted in the introduction of products into the market, and Plaintiffs' cause of action arises from the unlicensed use, sale, offer for sale, and importation of those products. As alleged in the proposed amended complaint, NVIDIA Corporation's website states that several models of accused NVIDIA computer graphics cards have been sold at Best Buy, which operates multiple stores in this district. *Id.* ¶ 22–24. During the time that these accused computer graphics cards were sold at Best Buy, NVIDIA Singapore made multiple shipments of computer graphics cards to NVIDIA Corporation in the United States. *Id.* ¶ 14. Thus, on information and belief, computer graphics cards shipped by NVIDIA Singapore to NVIDIA Corporation in the United States were sold nationwide at Best Buy, including at Best Buy locations in Delaware. *Id.* ¶ 25. These allegations satisfy the second and third prongs of the stream of commerce theory as to NVIDIA Singapore and establish personal jurisdiction over it.

NVIDIA International, which directly owns NVIDIA Singapore, also intended to serve the United States market, including Delaware. First, as alleged in the proposed amended complaint, ████████████████████████████████████████████ ████████████████████████████. *Id.* ¶ 40–42. Second, ████████ ████████████████████████████ a PCA with Plaintiffs' U.S.-based parent company, Xperi, which licenses U.S. patents relevant to the products that ████████████ ████████████████. *Id.* ¶ 43. The PCA provides that any disputes arising under the PCA are to be decided in Delaware under Delaware law. *Id.* Third, NVIDIA International both wholly owns—and is wholly owned by—entities that have extensively targeted the United States market, *i.e.*, NVIDIA Singapore and NVIDIA Corporation. *Id.* ¶ 44. Fourth, one of NVIDIA International's directors holds the same position at NVIDIA Singapore and also works for NVIDIA Corporation in the United States. *Id.* ¶ 45. Fifth, NVIDIA International has not sought to exclude from its efforts some portion of the country that includes Delaware. *Id.* ¶ 46. For all these reasons, NVIDIA International intended to serve the United States market, including Delaware, which satisfies the first prong of the stream of commerce test.

As with NVIDIA Singapore, NVIDIA International's intent to serve the United States market, including Delaware, resulted in the introduction of products into the market, and Plaintiffs' cause of action arises from those products. *Id.* ¶¶ 48–50. As previously mentioned, accused products were sold at Best Buy, and Best Buy maintains multiple stores in this district. *Id.* ¶¶ 23–26. Thus, on information and belief, ████████████████████████ ████████████████████████████████████████████ ████████████████. *Id.* ¶ 51. These allegations satisfy the second and third prongs of the stream of commerce test as to NVIDIA International and establish personal jurisdiction over it.

### 3.    NVIDIA Will Not Be Unduly Prejudiced

"To show undue prejudice, a defendant must demonstrate that it will be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence' unless leave to amend is denied." *Home Semiconductor*, 2019 WL 2135858, at *5. NVIDIA cannot make this showing. Allowing amendment will not disadvantage NVIDIA's ability to present any alleged evidence regarding its defenses of invalidity or non-infringement because the proposed amended complaint does not introduce additional patents or additional models of accused products. Additionally, fact discovery does not end until six months from now on December 10, 2020 (D.I. 25 ¶ 3(a)), and trial does not begin until over a year from now on September 20, 2021 (*id.* ¶ 16). As this Court has noted before, the prospect of further discovery fails to establish undue prejudice under Rule 15(a) because "[i]f requiring additional discovery . . . were sufficient prejudice, most amendments would not be allowed," which would be "contrary to 'the well-established rule that amendments should be liberally allowed.'" *Int'l Constr. Prod.*, 2018 WL 4611216, at *4 (quoting *Long*, 393 F.3d at 401).

## V.    <u>CONCLUSION</u>

For the reasons explained above, Plaintiffs respectfully request that the Court enter an order granting leave to file the proposed First Amended Complaint attached hereto as Exhibit 1.

Dated: June 10, 2020

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone:     (302) 777-0300
Facsimile      (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael K. Plimack (admitted *pro hac vice*)
Nitin Subhedar (admitted *pro hac vice*)
Udit Sood (admitted *pro hac vice*)
Michael E. Bowlus (admitted *pro hac vice*)
Ziwei Song (admitted *pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
Telephone:     (415) 591-6000
Facsimile:     (415) 591-6091
mplimack@cov.com
nsubhedar@cov.com
usood@cov.com
mbowlus@cov.com
ksong@cov.com

Robert T. Haslam (admitted *pro hac vice*)
Thomas E. Garten (admitted *pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone:     (650) 632-4700
Facsimile:     (650) 632-4800
rhaslam@cov.com
tgarten@cov.com

Matthew Phelps (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue

New York, NY 10018-1405
Telephone:     (212) 841-1000
Facsimile:     (212) 841-1010
mphelps@cov.com

*Attorneys for Plaintiffs*

## <u>RULE 7.1.1 CERTIFICATION</u>

The undersigned hereby certifies that, after conferring with defense counsel,

Defendant opposes the relief requested in the foregoing motion.


<u>/s/ Brian E. Farnan</u>
Brian E. Farnan (Bar No. 4089)