# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INVENSAS CORPORATION and TESSERA
ADVANCED TECHNOLOGIES, INC.,

        Plaintiffs,

    v.

NVIDIA CORPORATION,

        Defendant.

Civil Action No. 19-cv-861-RGA

FILED UNDER SEAL

CONTAINS RESTRICTED –
OUTSIDE ATTORNEYS' EYES
ONLY INFORMATION

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR LEAVE TO AMEND THE COMPLAINT

Of Counsel:

Michael K. Plimack (mplimack@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
Udit Sood (usood@cov.com)
Michael E. Bowlus (mbowlus@cov.com)
Ziwei Song (ksong@cov.com)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Dated:  July 1, 2020

*Additional counsel located on the following
page*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Robert T. Haslam (rhaslam@cov.com)
Thomas E. Garten (tgarten@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Matthew Phelps (mphelps@cov.com)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

## <u>TABLE OF CONTENTS</u>

I.    Introduction and Summary ................................................................................. 1

II.   Argument .......................................................................................................... 2

    A.   Plaintiffs Diligently Sought Discovery Regarding NVIDIA's Acquisition of Accused Products, and NVIDIA Unreasonably Delayed for Over Six Months ...................................................................................................... 2

    B.   NVIDIA's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Cannot Be Discovered from Its 10-K Reports ................................................. 5

    C.   NVIDIA Will Not Be Unduly Prejudiced Because the Amended Complaint Asserts the Same Patents and Accuses the Same NVIDIA Products.................................................................................................... 8

III.  Conclusion ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Long v. Wilson*,
   393 F.3d 390 (3d Cir. 2004)..................................................................................10

**Other Authorities**

Local Rule 16.4....................................................................................................10

## I.    <u>INTRODUCTION AND SUMMARY</u>

On the first day of discovery, Plaintiffs requested documents related to sales, delivery, importation, and distribution of accused products. Had NVIDIA timely responded to these requests, Plaintiffs would have known prior to the deadline to amend the complaint that NVIDIA ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ NVIDIA Singapore and NVIDIA International. Instead, NVIDIA engaged in a campaign of obstruction and delay to ensure that Plaintiffs would not receive this information until well after the deadline to amend the complaint. When NVIDIA finally provided the requested discovery, it became clear that among a group of more than 40 wholly-owned NVIDIA subsidiaries, NVIDIA Singapore appears to generate more than 80 percent of NVIDIA's total annual revenue ($9.7 out of $11.7 billion). And now, NVIDIA remarkably tries to profit from its delay by blaming Plaintiffs for not discovering sooner the information that it hid for months. The Court should reject NVIDIA's attempt to benefit from this conduct.

Notably, NVIDIA does not dispute that NVIDIA Singapore and NVIDIA International play a meaningful role in the alleged infringement. NVIDIA argues that it would be unduly prejudiced by the addition of these two subsidiaries as defendants in this action, but that is not the case. The proposed amended complaint is limited to the exact same series of infringing NVIDIA products (GPUs and SoCs) designed by the current defendant NVIDIA Corporation and accused in the original complaint. Accordingly, the amendment would not expand or have any impact on arguments relating to claim construction, infringement, or validity. Discovery regarding NVIDIA Singapore and NVIDIA International would be limited, primarily concerning damages, *i.e.*, sales, delivery, importation, and distribution of the accused products. Such discovery can easily be completed prior to the December 10, 2020 cut-off. Moreover, including these subsidiaries will allow the jury to know the full extent of infringement without any meaningful impact on the conduct of trial.

II.     **ARGUMENT**

   A.     **Plaintiffs Diligently Sought Discovery Regarding NVIDIA's Acquisition of Accused Products, and NVIDIA Unreasonably Delayed for Over Six Months**

In their opening brief, Plaintiffs set forth evidence demonstrating their repeated diligent efforts to obtain discovery from NVIDIA regarding its acquisition of accused products. D.I. 150 at 3–9. Plaintiffs also set forth evidence demonstrating NVIDIA's repeated delays in producing basic information responsive to Plaintiffs' straightforward discovery requests. *Id*. NVIDIA's opposition brief simply ignores all of these facts. *See generally* D.I. 158. The truth is that NVIDIA delayed providing its responsive production for over six months, such that NVIDIA did not disclose its ███████████████████ ██████████████████ until well after the deadline to amend the complaint.

On July 30, 2019, the first day of discovery, Plaintiffs requested, for each accused product, "documents relating to each importation into the United States, including . . . the importer(s), the port of entry, [and] the person and location to which the shipment was delivered," Ex. 3[1], at 19 (RFP 43). Plaintiffs also requested, on the same day, documents that "disclose the supply chain for each product, starting with the manufacture of each product (e.g., geographic location of manufacture) and ending with the sale of the product (whether made to a distributor, a wholesaler, a retailers, or directly to a customer), including documents that identify any third party involved in any part of the supply chain, that party's role, and the dates of that party's involvement." *Id.* at 20 (RFP 48). Thus, since discovery began, Plaintiffs have sought from NVIDIA information regarding its acquisition of accused products, whether through importation or through third parties involved in its supply chain, such as subsidiaries.

---

[1] Exhibit numbers 26, 27, and 28 are attached hereto.  All other exhibit numbers referenced herein were attached to D.I. 151.

NVIDIA responded to these requests and others on August 29 by referring Plaintiffs to a forthcoming production of a "summary of sales information as kept in the ordinary course of business." Ex. 5 at 61–63, 69–70. NVIDIA's reference to this "summary of sales information" touched off a months-long campaign of delay and obstruction by NVIDIA. For example, on October 16, Plaintiffs asked NVIDIA to produce the sales information by October 25. Ex. 8. Plaintiffs also noted that they intended to contact the Court to pursue a resolution if necessary. *Id.* NVIDIA responded on October 30 by arguing that a failure to provide a timely response to discovery does not constitute "any basis for moving to compel." Ex. 9. Moreover, in a transparent attempt to delay a motion to compel, NVIDIA stated that it would provide the sales information a month later "on November 27." *Id.* But NVIDIA failed to do even that. Ex. 10.

After NVIDIA failed to produce the sales information on November 27, Plaintiffs asked NVIDIA to produce it by December 11 (Ex. 11 at 2), and then asked again for NVIDIA to produce it by December 27 (Ex. 13). NVIDIA dismissed both of these requests as unreasonable and moved the goal posts again by vaguely referring to supplementation "in early January." Exs. 12, 14. Early January came and went, and NVIDIA still did not produce its "summary of sales information." Thus, Plaintiffs filed a motion to compel on January 17, 2020. D.I. 82. Only then did NVIDIA make its first partial production of the "summary of sales information" that it promised in response to Plaintiffs' requests from July 2019. Ex. 15.

NVIDIA's rolling production continued into February. Ex. 16; Ex. 17 at 88–91. The completed "summary of sales information" included 52 spreadsheet files, each with hundreds or thousands of rows and, inexplicably, no product names. The parties conferred regarding the missing product names in February, and NVIDIA agreed to cure this deficiency by March 16. D.I. 110 at 2. Thus, NVIDIA is plainly wrong when it alleges that Plaintiffs "waited until April"

to confer with NVIDIA regarding its production (D.I. 158 at 4)—Plaintiffs had been asking NVIDIA about its production continuously for months.

Following NVIDIA's supplemental production of product names in March, Plaintiffs asked NVIDIA in April about NVIDIA's shifting characterization of the scope of its production. Although NVIDIA once said that its production was limited to its products that were "sold for shipment to the United States," Ex. 5 at 61, 63, 69–70, NVIDIA changed its position in April and declared retroactively that it produced its worldwide sales "regardless of where the products were shipped." Ex. 18 at Attachment p. 3. Plaintiffs' questioning of NVIDIA regarding this shipment issue, and Plaintiffs' ongoing pursuit of their motion to compel, led NVIDIA to finally disclose in April—after hiding the information for *nine months* since Plaintiffs first requested it—that ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████. D.I. 136 at 6; Ex. 20. NVIDIA's ███████████

███████████████████████████ is plainly responsive to Plaintiffs' day-one requests for importation and supply chain documentation, and NVIDIA makes no attempt to claim otherwise or defend its significantly late production of this information.[2] Obscuring the subsidiaries' roles in this case works to NVIDIA's advantage because one of them, NVIDIA Singapore, appears to generate more than 80 percent of NVIDIA's total revenue. D.I. 151, Ex. 1 ¶ 16.

NVIDIA claims that amendment should be denied because it objected to providing discovery on behalf of its subsidiaries (D.I. 158 at 7), but this argument is a red herring. The

---

[2] NVIDIA also points to the May 4, 2020 discovery order (D.I. 140), in which the Court denied Plaintiffs' request for an order compelling NVIDIA to produce records from the files of its wholly-owned subsidiaries. D.I. 158 at 1, 4. This, too, is a red herring. The May discovery order in no way limited NVIDIA's obligation to provide discovery—from *its own* files—regarding its ████████████████████████████████████████ or other third parties.

discovery requests at issue here sought documentation *from NVIDIA* about its acquisition of accused products. The named defendant's importation of accused products, and the named defendant's supply chain for those products, are certainly proper subjects for discovery. Thus, NVIDIA was obligated to timely provide its own documentation disclosing ██████████████ ████████████████████████████████████████████████ regardless of whether it also produced documents from those companies.

NVIDIA also claims that amendment should be denied because Plaintiffs defined accused products in this case as products that were "made, used, offered for sale or sold within the United States or imported into the United States." *Id.* at 8 (quoting Ex. D at 2, 5, 6). This argument is a red herring too because under this definition, NVIDIA nonetheless ████████████████████ ███████████████████████████████. Specifically, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████, and NVIDIA Corporation ████████████████████ ████████████████████████████████████████████████, *id.*, meaning that those products are also accused. *See also, e.g.,* Ex. 1 (Proposed Amended Complaint) ¶¶ 14, 41–42, 89. Thus, Plaintiffs' definition of accused products provides no excuse for NVIDIA's failure to timely disclose ████████████████████████████.

**B.  NVIDIA's ████████████████████████████ Cannot Be Discovered from Its 10-K Reports**

NVIDIA's opposition brief does not deny that NVIDIA was obligated to timely produce documents in response to Plaintiffs' requests for documentation regarding its importation and supply chain of accused products, which would have revealed the identities and roles of these two subsidiaries. *See* D.I. 158. NVIDIA's brief also does not attempt to justify its grossly delayed and incomplete responses to Plaintiffs' discovery requests. *Id.* Instead, NVIDIA tries to

shift blame by arguing that Plaintiffs should have determined the role of these subsidiaries on their own, citing NVIDIA's public 10-K reports. This argument should be rejected because the 10-K reports do not contain the relevant information.

The 10-K reports merely list all of NVIDIA's subsidiaries, and the only information provided is the name and country of organization of each subsidiary. No information is provided about whether these subsidiaries have a role with respect to accused products, and if so, the nature of that role. The table below provides the subsidiary information from NVIDIA's 2018 10-K report. NVIDIA Singapore and NVIDIA International are bolded.

|   | **NVIDIA Corporation Subsidiary Listed in 2018 10-K Report** | **Country** |
|---|---|---|
| 1 | Icera LLC | United States |
| 2 | Icera Semiconductor LLC | United States |
| 3 | JAH Venture Holdings, Inc. | United States |
| 4 | LPN Facilitator LLC | United States |
| 5 | NVIDIA (BVI) Holdings Limited | Virgin Islands, British |
| 6 | NVIDIA ARC GmbH | Germany |
| 7 | NVIDIA Brasil Computação Visual Limitada | Brazil |
| 8 | NVIDIA Development France SAS | France |
| 9 | NVIDIA Development UK Limited | England and Wales |
| 10 | NVIDIA Development, Inc. | Canada |
| 11 | NVIDIA Dutch B.V. | Netherlands |
| 12 | NVIDIA Entertainment Devices (Shanghai) Co., Ltd | China |
| 13 | NVIDIA FZ-LLC | United Arab Emirates |
| 14 | NVIDIA GK | Japan |
| 15 | NVIDIA Global Ltd | Virgin Islands, British |
| 16 | NVIDIA GmbH | Germany |
| 17 | NVIDIA Graphics Holding Company | Mauritius |
| 18 | NVIDIA Graphics Private Limited | India |
| 19 | NVIDIA Hong Kong Development Limited | Hong Kong |
| 20 | NVIDIA Hong Kong Holdings Limited | Hong Kong |
| 21 | NVIDIA International Holdings Inc. | United States |
| 22 | **NVIDIA International, Inc.** | **Cayman Islands** |
| 23 | NVIDIA Israel Ltd. | Israel |
| 24 | NVIDIA Italy S.r.l. | Italy |
| 25 | NVIDIA Land Development, LLC | United States |
| 26 | NVIDIA Lease Holdings LLC | United States |
| 27 | NVIDIA Ltd. | England and Wales |
| 28 | NVIDIA Poland sp.z o.o | Poland |

6

| | NVIDIA Corporation Subsidiary Listed in 2018 10-K Report | Country |
|---|---|---|
| 29 | NVIDIA Pty Limited | Australia |
| 30 | NVIDIA Semiconductor (Shenzhen) Co., Ltd. | China |
| 31 | NVIDIA Semiconductor Holding Company | Mauritius |
| 32 | NVIDIA Semiconductor R&D (Tianjin) Co., Ltd. | China |
| 33 | NVIDIA Semiconductor Shenzhen Holding Company | Mauritius |
| 34 | NVIDIA Semiconductor Technical Service (Shanghai) Co., Ltd. | China |
| 35 | NVIDIA Semiconductor Technology (Shanghai) Co., Ltd. | China |
| 36 | NVIDIA Singapore Development Pte. Ltd. | Singapore |
| 37 | **NVIDIA Singapore Pte Ltd** | **Singapore** |
| 38 | NVIDIA Switzerland AG | Switzerland |
| 39 | NVIDIA Technical Service (Beijing) Co., Ltd. | China |
| 40 | NVIDIA Technology UK Limited | England and Wales |
| 41 | NVIDIA, Helsinki Oy | Finland |
| 42 | VC Worldwide Ltd. | Virgin Islands, British |

D.I. 158, Ex. C.

This list includes 42 subsidiaries and 22 countries. NVIDIA asserts that this list should have allowed Plaintiffs to determine that of these dozens of subsidiaries, ███████████ ████████████████████████████████████████████. On the contrary, no rule or authority required Plaintiffs to parse this web of subsidiaries instead of relying on properly propounded discovery requests eliciting the role of the two relevant subsidiaries.

NVIDIA also accuses Plaintiffs of a "lack of effort" because financial reports for NVIDIA Singapore can be purchased from the Singaporean government and importation records for NVIDIA Singapore can be located through a private subscription service. *See* D.I. 158 at 8–10. NVIDIA's position appears to be that during the many months that NVIDIA delayed simply providing documentation regarding its ███████████████████████, Plaintiffs should have purchased financial reports from 22 countries for all 42 subsidiaries, and searched for importation records for all of them, rather than receiving responsive information from NVIDIA well before the deadline to amend the complaint. The

rules of amendment do not require Plaintiffs to search for a needle in a haystack, particularly

when there are dozens of haystacks located throughout the world in the British Virgin Islands,

the Cayman Islands, Mauritius, India, China, Hong Kong, Singapore, Canada, and elsewhere.

Instead, Plaintiffs did what they were supposed to do—they requested importation records and

supply chain documentation directly from NVIDIA Corporation on the first day of discovery.

Ex. 3, at 19–20. Thus, NVIDIA has been obligated to produce this information to Plaintiffs for

the entire discovery period, including for several months before the amendment deadline of

December 2, 2019. Additionally, NVIDIA has insisted that "the fact that ████████████

████████████████████████████████████ is confidential information,"

Ex. 24 (emphasis in original), and that ████████████████ is "confidential," Ex.

25. Thus, NVIDIA itself believes that this information cannot be discovered from public

materials. NVIDIA cannot claim this information as confidential but then argue that Plaintiffs

did not find it soon enough.

### C.    NVIDIA Will Not Be Unduly Prejudiced Because the Amended Complaint Asserts the Same Patents and Accuses the Same NVIDIA Products

NVIDIA will not be unduly prejudiced by amendment because the substantive scope of

the infringement and validity case will not change. Plaintiffs' amendment will not add patents or

different types of accused products. The proposed amended complaint is limited to the exact

same series of infringing NVIDIA GPUs and SoCs accused in the original complaint. *See* Ex. 2

(redline comparison), ¶¶ 66–72. This means that NVIDIA's invalidity contentions, the parties'

claim construction briefing, and the parties' technical analyses of the accused products will all be

the same—and completely unaffected by amendment. NVIDIA does not claim otherwise.

NVIDIA also will not be unduly prejudiced because adequate time remains for discovery

involving the subsidiaries, and adequate time remains for all parties to prepare for trial.

Discovery does not end until December 10, 2020. D.I. 25 ¶ 3(a). This amount of time is adequate because discovery from the subsidiaries will be focused on damages issues, primarily concerning non-technical information such as sales, delivery, importation, and distribution of the accused products. Trial does not begin until September 20, 2021, which is over a year away. *Id.* ¶ 16.

The current schedule for discovery and trial is adequate for the additional reason that NVIDIA Singapore's longtime director Mr. Michael Byron has already been identified by NVIDIA as a corporate witness in this case. Ex. 26 (6/18/2020 Email from C. Williamson); Ex. 1 (Proposed Amended Compl.) ¶ 19. Plaintiffs anticipate that Mr. Byron ultimately will provide corporate testimony on behalf of both NVIDIA Singapore and NVIDIA Corporation, thereby streamlining discovery and trial.

NVIDIA offers only two arguments regarding alleged undue prejudice. First, NVIDIA claims it would be prejudiced by amendment because ███████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████.″ D.I. 158 at 11–12. NVIDIA's vague allegation of ████████████ prejudice— unsupported by any declaration—does not establish that it would be unduly prejudiced by amendment. NVIDIA makes no showing that the remaining time in discovery would prevent it from adequately investigating ████████████. Thus, the Court should reject NVIDIA's unsubstantiated argument.

Second, NVIDIA claims that it would be unduly prejudiced by amendment because adding two defendants would be "problematic" under the case schedule. *Id.* at 12. However, as explained above, this is incorrect because adequate time remains to obtain limited non-technical discovery from the subsidiaries, and for all parties to prepare for trial. NVIDIA references the need to serve the subsidiaries with the amended complaint, but this need always arises when new

defendants are added through amendment. Denying leave to amend because new defendants need to be served would be contrary to "the well-established rule that amendments should be liberally allowed." *Long v. Wilson*, 393 F.3d 390, 401 (3d Cir. 2004). The same is true regarding NVIDIA's hypothetical reference to a motion to dismiss. The hypothetical possibility of a motion to dismiss does not warrant denying leave to amend.

Finally, NVIDIA ends its brief by including on the last page a throwaway request to "extend the exiting [*sic*] case schedule by, at a minimum, five months." D.I. 158 at 13. The Court should decline to entertain NVIDIA's unsubstantiated request because it is irrelevant to establishing any purported undue prejudice by NVIDIA and because it plainly violates this Court's Local Rule 16.4. NVIDIA has not moved for an extension of any deadlines, and it has not provided any affidavit or certification in support of such an extension.

The Court should reject NVIDIA's improper extension request for the additional reason that NVIDIA included the request in its opposition brief merely as a ploy to try to obtain institution of *inter partes* review of the '946 and '231 patents at the Patent Trial and Appeal Board. On the *very next day* after filing its opposition brief in this Court on June 24 (D.I. 158), NVIDIA filed reply briefs with the PTAB arguing that IPR should be instituted because "Petitioner has requested at least a five month extension to the case schedule" in this Court. Ex. 27 (reply brief for '946 patent) at 2, Ex. 28 (reply brief for '231 patent) at 2. Thus, NVIDIA included gratuitous language in its briefing to this Court to try to get an advantage elsewhere. This is an improper use of the Court's resources and should be rejected.

**III.    CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion for leave to amend.

Dated: July 1, 2020

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone:     (302) 777-0300
Facsimile      (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael K. Plimack (admitted *pro hac vice*)
Nitin Subhedar (admitted *pro hac vice*)
Udit Sood (admitted *pro hac vice*)
Michael E. Bowlus (admitted *pro hac vice*)
Ziwei Song (admitted *pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
Telephone:     (415) 591-6000
Facsimile:     (415) 591-6091
mplimack@cov.com
nsubhedar@cov.com
usood@cov.com
mbowlus@cov.com
ksong@cov.com

Robert T. Haslam (admitted *pro hac vice*)
Thomas E. Garten (admitted *pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone:     (650) 632-4700
Facsimile:     (650) 632-4800
rhaslam@cov.com
tgarten@cov.com

Matthew Phelps (admitted *pro hac vice*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue

11

New York, NY 10018-1405
Telephone:      (212) 841-1000
Facsimile:      (212) 841-1010
mphelps@cov.com

*Attorneys for Plaintiffs*